Mr. Justice Shepard
delivered the opinion of the Court:
The appellee, Benjamin Whipps, brought his action against the District of Columbia to recover damages for personal injuries received through its negligence and recovered a judgment for $1,500 from which this appeal has been prosecuted.
*416 The facts upon which the case was submitted to the jury-are stated in the bill of exceptions as follows:
“The plaintiff, to maintain and prove the issues on his part joined, was sworn as a witness in his own behalf and testified that he was between forty-seven and forty-eight years of age and was a whitewasher and plasterer by trade; that on September 25, 1896, between 4 and 5 o’clock P. M., he went to Godey’s lime kilns, at Twenty-seventh and L streets northwest, Washington City, to get a barrel of lime; that he drove with his horse and wagon along on the west side of Twenty-seventh street and turned west down an alley called ‘Godey’s road’ to the lime kilns; that after he had purchased a barrel of lime and put it in his wagon he started back to Twenty-seventh street; that in going up Godey’s road to the street the barrel of lime tipped over, and when he got into Twenty-seventh street he stopped for several minutes under a wire cable that was being used in the sewer construction then going on in the street to adjust his barrel of lime, and while in the act of fixing it the wire cable fell upon him, inflicting the injuries complained of; that he was taken to Emergency Hospital, where he remained thirteen days, and was then taken home, where he remained in bed six weeks and one day from the time the doctor put the cast on. On cross-examination the plaintiff testified that he had been in the habit of getting his lime from Godey’s lime kilns ; that on the day of the accident he knew of the sewer construction in Twenty-seventh street; that he saw the towers and cable on Twenty-seventh street when he went to get the lime; that in turning from Twenty-seventh street into Godey’s road he passed between the north tower supporting the cable and a shed on the corner; that when he got his lime he came out byway of Godey’s road and started to cross Twenty-seventh street south of the tower supporting the cable, intending to go along on the east side to L street; that he undertook to cross Twenty-seventh street under the cable instead of returning the way he had come, because *417 some teams of Mr. Dodson, proprietor of the lime kilns, from which stone for the kilns was being unloaded, were standing in the way; that Godey’s road is steep and he had to get into Twenty-seventh street before he could stop his horse to fix the barrel of lime, and that is why he stopped under the cable as he supposed; that he knew they were digging a sewer in the street and that the towers and cables were there; that his intention was, when he got across Twenty-seventh street, to go north on the east side to L street.”
The foregoing contains all the evidence on the subject of the plaintiff’s contributory negligence.
The plaintiff offered other witnesses, who gave evidence tending to show the nature and extent of his injuries; that there were no barricades to prevent the passage of teams under the cable used in the sewer construction in Twenty-seventh street at the point where he was injured; that when the plaintiff came out of Godey’s road into Twenty-seventh street, immediately before the accident complained of happened, the west side of the street was obstructed by horses and carts so that he could not return on that side of the street; that there was no work begun in the sewer where he was about to cross; that neither the stone nor dirt had been disturbed; and there rested.
And thereupon the defendant, to maintain the issues on its part joined, offered and gave evidence tending to prove that it was at the time of the accident complained of, through its contractor engaged in building a sewer in Twenty-seventh street, and had erected over the proposed trench a cable, to which was attached a trolley for carrying buckets loaded with dirt taken from the excavation; that said cable and trolley was supported by two triangular-shaped towers composed of large timbers framed together and strongly braced; that said towers, which were ten feet wide at the base, two feet wide at the top, and thirty feet high, rested on heavy wooden sills, to which they were fastened by heavy chains; that said towers, besides being held in *418 position by the cables they supported, which cable was fastened at either end to posts planted in the ground, were also secured each by two guy ropes fastened to trees or posts; that on the day of the accident these towers and the cable had been shifted about two hundred feet north toward L street, one tower being located about the middle of the entrance to the. alley or Godey’s road; that the work óf shifting the towers and putting the cable in position was done in a secure and proper manner by men skilled and experienced in sewer construction, and that when the men left the work at 4.30 P. M. the day of the accident the towers and cable were securely and properly guyed and fastened preparatory to going to work on the next day; that when the plaintiff came out of Godey’s road on the day of the accident he attempted to cross Twenty-seventh street south of the tower and immediately under the cable instead of going along the west side of the street, the way he had come, as he might have done, the west side of the street north of Godey’s road being safe and unobstructed at the time, and being also the way usually traveled by teams going to the Godey lime kilns during the time of said sewer construction; that the plaintiff stopped in Twenty-seventh street immediately under the cable connected with the sewer construction and attempted to fix a barrel of lime in his wagon, and that while thus engaged a heavy two-horse wagon belonging to som e one else than the defendant or its contractor collided with the south tower, causing it to fall, carrying down the cable upon the plaintiff, and inflicting the injuries complained of; and here the defendant rested.
Thereupon the plaintiff in rebuttal offered and gave evidence tending to prove that when he came out of Godey’s road on the day of the accident the west side of Twenty-seventh street was obstructed by carts loaded with stone for the lime kilns; that there were no chains fastening the towers to the sills, and no guys to the towers, aside from the ends of the cable, at the time of the accident; that no *419 wagon collided with the tower supporting the cable; and here the plaintiff rested.
Upon the introduction of the foregoing evidence, the defendant prayed the court to instruct the jury that, upon the whole evidence, the plaintiff was not entitled to recover, and the verdict should be for the defendant. The grounds of this prayer, as stated in others, were, first, that the defendant was lawfully engaged in constructing a sewer in the streets and could not be charged with negligence therein because the street was left in a reasonably safe condition for travel in the ordinary modes thereof; and second, that the plaintiff, without reasonable care, drove under the cable and stopped his wagon immediately thereunder, wherefore his injury was the result of contributory negligence. Having refused these prayers, the court instructed the jury substantially as follows: 1. The burden of proof is upon the plaintiff to show that the injury resulted from the want of ordinary care on the part of the defendant’s contractor in placing in condition and safely maintaining appliances for the construction of the sewer. 2. The District had the right to erect the towers and attach the cable thereto for the purpose intended; but it was its duty to have them erected in a reasonably safe manner so as to prevent their falling under ordinary circumstances; and the test of negligence herein is whether there was a failure to take such precautions as an ordinarily prudent person would have taken under similar circumstances. 4. That it was the duty of the jury to determine from the evidence whether there were any guy ropes or stay chains used to support the towers, and if not, whether the omission showed a want of ordinary care as before defined; also whether erecting and leaving the towers in such a condition that an ordinary wagon running against one of them would cause it to fall, showed a want of ordinary care.
5. (Given at request of plaintiff):
“ If the jury shall find from' the evidence that the tower *420 fell, and the plaintiff was injured by the cable attached thereto because of the lack of reasonably safe guying or other support to said tower, and without any fault or negligence on the part of the plaintiff contributing to said accident, then the plaintiff is entitled to recover; and if the jury shall find that a wagon ran against said tower and caused it to fall, it will be a question for them, under all the evidence, whether it was negligence on the part of the defendant, its contractor or his employees, to leave the said tower in such condition that it could be thrown down thereby.” '
6. (Given at the request of the defendant):
“If the jury believe from the evidence that plaintiff at the time of the injury complained of knew of the construction of the sewer in Twenty-seventh street; that said street at the place of the injury was obstructed with tim bers, ropes, and other implements used in the execution of the work, or by the exercise of ordinary care might have known it, and that he failed to exercise that special care and caution to avoid the risk of accident that a prudent person would have exercised under all the circumstances, then he is not entitled to recover, and their verdict should be for the defendant. ”
And this was supplemented by the further instruction, that, taking into consideration th e surrounding circumstances, if the plaintiff did what a reasonably prudent person would not have done in crossing and stopping under the cable, as shown by the evidence, and thereby contributed to the accident, he was not entitled to recover even though the jury might believe that the defendant had been guilty of negligence in the manner of erecting and securing the towers.
We find no error in the instructions given. They carefully, and with liberality to the appellant instructed the jury both in respect of the rights and obligations of the District of Columbia, in improving the public streets, and of the plaintiff, in travelling the street then in the course of *421 improvement, in accord with, the rule heretofore laid down by this court. District of Columbia v. Ashton, 14 App. D. C. 671, 577.
In that case, which is strongly relied on by the appellant as supporting both of its contentions, that the evidence does not show negligence on the part of the defendant, and does show contributory negligence on the part of the plaintiff, the court held that the evidence disclosed such contributory negligence on the part of the plaintiff therein as barred his right of recovery. It is sufficient to say that there is no similarity between the facts of that case and this. Under the evidence offered by the plaintiff in this case tending to show the manner in which the towers supporting the heavy cable had been erected and left to stand in a travelled street, the court was bound to submit the question of the defendant’s negligence, in the matter thereof, to the jury. And this was done with a fair and clear statement of the legal rights and duties of the defendant in the exercise of the powers intrusted to it for the improvement of the public streets. District of Columbia v. Ashton, supra; Swart v. District of Columbia, ante, p. 407.
On the question of contributory negligence, the evidence shows that the plaintiff had gone his usual way to a lime kiln, and was returning with a barrel of lime purchased for his own use. He might, it is true, have avoided passing under the cable by waiting on some wagons temporarily in the way. But, whilst true that he saw the cable which passed over the towers, there is no evidence tending to show that he knew of the unsafe and dangerous condition of the supporting towers, or had reason to apprehend the probable fall of the cable. Nor does the evidence show that he stopped idly and lingered immediately under the cable; but that he did so for the purpose of adjusting the barrel in the wagon to prevent damage to it, and was so engaged when hurt. The court was necessarily bound to submit this issue to the *422 jury also. It was their province to determine whether, under all the circumstances, the plaintiff acted as an ordinarily prudent person would, in reasonable probability, have acted if similarly situated and informed. It would indeed be a violent stretch of the law to say that any person walking upon the streets of a modern city in pursuit of business or pleasure, who shall pass under or stop, for any ordinary purpose, beneath a suspended cable, without proof, at least, of circumstances plainly warning him of the danger, thereby necessarily becomes guilty of such contributory negligence as to bar his recovery against the party whose negligence, primarily, caused the injury.
One is not bound to presume, in the absence of some fact reasonably suggesting it to a man of ordinary prudence, that all such structures have been negligently constructed and therefore necessarily dangerous. The judgment will be affirmed; and it is so ordered. Affirmed.